COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-221-CR
 
KAREN L. WILSON                                                        
   APPELLANT
V.
THE STATE OF TEXAS                                                        
   STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
       
A jury convicted Appellant Karen L. Wilson of intentionally or knowingly causing
the death of her estranged husband Robert Wilson, Complainant, by running over
him with her Tahoe. The jury assessed her punishment at fifty years' confinement
in the Institutional Division of the Texas Department of Criminal Justice, and
the trial court sentenced her accordingly.
       
Appellant brings six issues, challenging the legal sufficiency of the evidence,
the denial of her motion for new trial, the admission of evidence of the prior
relationship she had with Complainant, and the trial court's ruling on the
State's objection to her jury argument. Because we hold that the trial court did
not err, we affirm the judgment.
STATEMENT
OF FACTS
       
On June 24, 2001, Complainant was killed when he was run over by a Tahoe driven
by Appellant. Five eyewitnesses testified that they heard Appellant screaming at
someone. The witnesses then watched Appellant do a "donut" in the
median of Risinger Road, drive off, return at an estimated speed of twenty to
thirty miles per hour, jump a curb, and drive directly at and hit Complainant,
who was walking through a parking lot. Witnesses further testified that after
hitting Complainant, Appellant got out of the vehicle, grabbed the body by the
shoulders, shook it, and yelled at it. Appellant then returned to her vehicle
and drove off. The witnesses described the vehicle as being driven in a normal
manner and under control except for the donut.
SUFFICIENCY
OF THE EVIDENCE
       
In her first two issues, Appellant argues that the evidence is legally
insufficient to show that her act was voluntary and to prove the necessary
mental state. Appellant argues that because the various witnesses described her
running over her husband as an accident, the evidence showed that her act was
not voluntary. Appellant also argues that, even if this court should find the
evidence sufficient to show that her conduct was voluntary, the evidence would
not support a finding that her culpable mental state was intentional or knowing.
       
As the State points out, the legal sufficiency of the evidence to support a
criminal conviction is governed by the well-known standard of Jackson v.
Virginia.(2)  In reviewing the
legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the verdict.(3) 
The critical inquiry is whether, after so viewing the evidence, any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.(4)  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.(5)
       
A person commits the offense of murder if that person intentionally or knowingly
causes the death of the complainant.(6) 
Additionally, a person commits an offense only if that person voluntarily
engages in the conduct.(7)  The evidence,
therefore, must show that the accused committed a voluntary act with the
requisite mental state.(8)  The Texas Court
of Criminal Appeals has held that there is no defense of "accident"
recognized in the penal code.(9)  Instead,
evidence of an accident can trigger a jury charge on the issue of voluntariness.(10) 
It can also support a finding of recklessness as opposed to intentional or
knowing conduct.(11)
       
The evidence shows that Appellant and Complainant had a stormy relationship
characterized by fights and assaults.  The jury heard five witnesses
testify that Appellant was screaming at someone from her Tahoe.  The
witnesses watched Appellant do a donut in the median of Risinger Road and drive
off again.  They watched her return at an estimated speed of twenty to
thirty miles an hour, jump a curb, drive directly at Complainant, hit him, and
then drive off.
       
As the State points out, the evidence in this case supports a reasonable
inference that Appellant was angry at Complainant and intentionally returned to
the scene and ran over him.  Additionally, a close examination of the
record yields no evidence of an involuntary act.  We see no evidence of
mechanical malfunction of the automobile, nor do we see any evidence of any
involuntary physical body movements.(12) 
Applying the appropriate standard of review, we hold that the evidence is
legally sufficient to support the conviction.  We overrule Appellant's
first and second issues.
EXTRANEOUS
ACTS
       
In her third issue, Appellant argues that the trial court committed reversible
error in admitting evidence of her extraneous acts.  Appellant introduced
the subject of spousal abuse during voir dire and discussed it in her opening
statement.  The prosecutor, for his part, remarked in his opening statement
that he anticipated that Appellant would try to paint Complainant as a wife
beater and that the State would rebut those allegations by showing that
Appellant was the aggressor.  Neither side voiced an objection to any of
these statements.  On appeal, however, Appellant argues that the trial
court should not have introduced evidence of a disturbance call to the police
involving Appellant and Complainant's yelling and swearing at each other over
the possession of the Tahoe.  Nor, she contends, should the trial court
have admitted evidence that the police took Appellant away after responding to
the call.
       
In a homicide prosecution, the legislature has mandated that evidence of the
previous relationship between the accused and the deceased is admissible.(13) 
Although evidence admitted under article 38.36 is still subject to the
extraneous offense rules of 404(b) and 403 of the Texas Rules of Evidence, we
agree with the State's analysis of the relationship between 38.36 and 404(b) and
403.(14)  That is, extraneous offense
evidence is inadmissible if offered solely to prove character conformity or if
it is unduly prejudicial.(15)  If, however,
the evidence is offered for the purpose of showing and does show the
relationship between the parties, that evidence is admissible under rule 38.36
unless it is unduly prejudicial.(16)
       
The trial court's decision to admit evidence is subject to an abuse of
discretion standard of review.(17)  If the
decision to admit or exclude evidence falls within the zone of reasonable
disagreement, no abuse of discretion is shown.(18) 
The evidence of the prior relationship between the parties was admitted to rebut
Appellant's contentions that Complainant's injuries were the result of an
accident and that Complainant, not Appellant, was a violent and abusive
spouse.  Consequently, the prior relationship between the parties was
evidence of Appellant's intent or motive and the absence of accident or
mistake.  The trial court did not abuse its discretion by admitting the
evidence.  We overrule Appellant's third issue.
JURY
ARGUMENT
       
In her closing argument at the guilt-innocence phase, Appellant argued that
domestic violence "injures more women in America than any --." 
The State objected that the argument was outside the record, and the trial court
sustained the objection.
       
To be permissible, jury argument must fall within one of the following four
general areas: (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; or (4) plea for law
enforcement.(19)  Our review of the record
reveals no evidence supporting Appellant's assertion about domestic violence
injuring more women in America.  Thus, the argument was outside the record.(20) 
Additionally, Appellant's argument does not fall within any of the permissible
areas listed above.  The trial court did not err in sustaining the State's
objection. We overrule Appellant's fourth issue.
DENIAL
OF MOTION FOR NEW TRIAL
       
In her fifth and sixth issues, Appellant argues that the trial court reversibly
erred in overruling her motion for new trial based on the allegations that the
jury foreman obtained additional information about the case outside the record
and that the jury disregarded the trial court's instructions not to discuss the
case except within the confines of the jury room.
       
Granting or denying a motion for new trial rests within the sound discretion of
the trial court.(21)  This court has
described a proper analysis for allegations of juror misconduct:

 When jury
 misconduct is raised in a motion for new trial, whether misconduct has
 occurred is a decision for the trial court, and we will not disturb that
 ruling absent a clear abuse of discretion.  A movant for a new trial
 based on jury misconduct must show that (1) misconduct occurred, and (2) the
 misconduct resulted in harm to the movant.  The trial court is the sole
 judge of the credibility of the testifying jurors. In the absence of pertinent
 findings, we must view the evidence adduced at the hearing in the light most
 favorable to the trial court's ruling.(22)

Appellant argues
that the presiding juror obtained information about the case outside the record
and that his actions required the trial court to grant her motion for new
trial.  Tina Green's affidavit provided:

 When we were leaving Tandy Center after
 lunch, Karen--I was all of the way across the street, coming back to the
 courthouse, coming up the stairs, and Karen--some friends of Karen screamed
 that she had gotten sick.  I went back across-- ran back across the
 street, and I started like taking off her clothes, her jacket and stuff. 
 She was throwing up.


 He [the presiding juror] walked up
 behind me and kind of grabbed me by my waist and he was asking, "Are
 y'all ok? Is she going to be ok?" and I said, "Yeah," and he
 said, "Well, I will talk to you later," and then he went on.

 
       
Appellant argues that "[s]ince the Appellant's state of mind was a highly
disputed issue in the trial, the foreman's attempt to secure evidence of the
Appellant's mental state outside of the trial is a flagrant violation" of
the rules.(23)  She also contends that we
must presume the conversation harmed her.  We disagree.  The trial
court could have reasonably concluded that the presiding juror was not
attempting to secure evidence of Appellant's mental state.  Instead, he
came upon what appeared to be a medical emergency and inquired about the
well-being of the woman, Appellant, throwing up on the street.  He did what
any reasonably responsible person would do.  Additionally, the brief
conversation with Tina Green was not a discussion about the case.  The
trial court properly overruled Appellant's motion for new trial on this ground.
       
Appellant also argues that prior to submission of the court's charge, during
lunch time when they were not in a jury room and when all jurors were not
present, some jurors discussed some of the photographs admitted during the
trial.  The evidence regarding this allegation was conflicting.
Additionally there was no evidence that such discussions, if they occurred,
harmed Appellant.  The trial court did not abuse its discretion in
overruling Appellant's motion for new trial on this ground.  For the
foregoing reasons, we overrule Appellant's fifth and sixth issues.
CONCLUSION
       
Having overruled all of Appellant's issues, we affirm the trial court's
judgment.
 
                                                                      
LEE ANN DAUPHINOT
                                                                      
JUSTICE
PANEL B: DAUPHINOT, GARDNER, and WALKER,
JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: May 22, 2003

1.  See Tex. R. App. P. 47.4.
2.  443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).
3.  Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.
Crim. App. 1992), cert. denied, 507 U.S. 975 (1993).
4.  McDuff v. State, 939 S.W.2d 607, 614
(Tex. Crim. App.), cert. denied, 522 U.S. 844 (1997).
5.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789.
6.  Tex. Penal Code Ann. § 19.02 (Vernon 2003).
7.  Id. § 6.01(a).
8.  Rhodes v. State, 997 S.W.2d 692, 695
(Tex. App.--Texarkana 1999, pet. ref'd).
9.  See Williams v. State, 630 S.W.2d 640,
644 (Tex. Crim. App. 1982) (op. on reh'g).
10.  Id.
11.  Lawson v. State, 64 S.W.3d 396, 398
(Tex. Crim. App. 2001) ("Involuntary manslaughter is, by definition, an
accidental homicide, committed with recklessness.").
12.  See Brown v. State, 89 S.W.3d 630, 633
(Tex. Crim. App. 2002); Alford v. State, 866 S.W.2d 619, 624 (Tex.
Crim. App. 1993); Joiner v. State, 727 S.W.2d 534, 536-37 (Tex. Crim.
App. 1987).
13.  Tex. Code Crim. Proc. Ann. art. 38.36 (Vernon
Supp. 2003).
14.  See id.; Tex. R. Evid. 403, 404(b).
15.  Smith v. State, 5 S.W.3d 673, 679
(Tex. Crim. App. 1999).
16.  See id.
17.  Montgomery v. State, 810 S.W.2d 372,
379 (Tex. Crim. App. 1991) (op. on reh'g).
18.  Id.
19.  Felder v. State, 848 S.W.2d 85, 94-95
(Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro
v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
20.  See Gaddis v. State, 753 S.W.2d 396,
398 (Tex. Crim. App. 1988); Jordan v. State, 646 S.W.2d 946, 948 (Tex.
Crim. App. 1983) (both holding that counsel cannot use closing argument to place
evidence before the jury that is outside the record).
21.  Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995).
22.  Mayo v. State, 17 S.W.3d 291, 295-96
(Tex. App.--Fort Worth 2000, pet. ref'd) (op. on remand).
23.  See Tex. R. App. P. 21.3(f).