NO. 07-06-0027-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 31, 2007
_____

RUBEN SILVA CASTILLO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 2793; HONORABLE GORDON H. GREEN, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Ruben Silva Castillo appeals his conviction for possession of a controlled substance in a correctional facility. He assigns error to the trial court's failure to provide a jury instruction on voluntary conduct and questions the sufficiency of the evidence supporting his conviction. We affirm.

Most of the relevant facts are undisputed. Appellant went to the Parmer County Jail to visit an inmate. On entering the public area of the jail he presented identification to the dispatcher who processes visitation requests by, *inter alia*, checking the visitor's name

against a list of visitors for the requested inmate and checking for warrants. When the dispatcher discovered appellant had an outstanding warrant issued in another county, the dispatcher called the sergeant in charge of the jail for assistance. The sergeant confirmed appellant was the person named in the warrant and informed appellant he would be detained in the jail. During a later inventory of appellant's property in the booking area of the jail, the sergeant and a correctional officer found two small clear plastic bags containing methamphetamine in a small coin purse appellant was carrying, resulting in the present prosecution.

Appellant was charged in an indictment alleging he "intentionally or knowingly possess[ed] a controlled substance, namely, methamphetamine, while in a correctional facility, to-wit: the Parmer County jail." He was found guilty by a jury and sentenced to two years confinement and a $10,000 fine.

Penal Code Section 38.11(d)(1)(B) provides a person commits an offense by possessing a controlled substance while "in a correctional facility or a secure correctional facility[.]" Tex. Pen. Code Ann. § 38.11(d)(1(B) (Vernon Supp. 2006). The Penal Code defines both terms to include a county jail. Tex. Pen. Code Ann. § 1.07(a)(14)(A), (45)(A) (Vernon Supp. 2006).

We begin with appellant's second and third issues, by which he challenges the legal and factual sufficiency of the evidence he intentionally or knowingly possessed methamphetamine in the jail. In a legal sufficiency review, an appellate court must assess all the evidence in the light most favorable to the verdict to determine whether any rational

2

trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When conducting a factual sufficiency review, we review the evidence in a neutral light. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). However, we must be deferential to the jury's findings and resist intruding on the fact finder's role as the sole judge of the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000).

Each of appellant's three issues rest on his position the evidence "indicated that [he] was arrested on a warrant outside the jail facility and brought forcibly into the jail by deputies." Based on this characterization of the evidence, appellant argues his presence in the jail was not voluntary, thus his possession of a controlled substance there also was not voluntary. We cannot agree with appellant's characterization of the evidence. If, by "outside the jail facility," appellant means outside the building, we disagree with his reading of the record. No witness testified that appellant left the building between the time he presented himself at the dispatcher's window seeking to visit and his arrest. If, by that phrase, appellant is contending that the lobby or visitation areas of the building are not parts of the jail or correctional facility for purposes of Penal Code Section 38.11(d)(1)(B), we again disagree.

Testimony given by the Parmer County sheriff included his description of the jail. He indicated the jail is located adjacent to, and about 100 yards north of, the Parmer County courthouse. He later agreed the jail is "brand new." Asked about "types of facilities . . . at the jail" other than the jail cells, he testified, "Well, the jail encompasses the

3

administrative office in the front of the building. Of course, we have visitation areas for the inmates. We also have where we store our evidence, where we have the various functions surrounding the jail, their exercise areas and medical. Then we also have a large area on the south end that we call a sally port, but that's a big garage area where we bring people in and out and to secure our vehicles." The sheriff also responded positively to a question asking whether the "building itself" is classified as a correctional facility.

Witnesses sometimes distinguished between the secured[1] areas of the building and the front or lobby area. The sheriff said a visitor "would have to come in through the front administrative area into the lobby, and that would be pretty much all you could get into unless we let you in." The sergeant in charge of the jail testified he considered the unsecured lobby area in the facility "part of the . . . administration for the sheriff's office." He said the lobby "has two windows. You can actually go to the jail window or you can go to the secretary's window."

Appellant points to instances in which the sheriff and the correctional officer referred to appellant's having been brought "back into" the jail after deputies learned of the outstanding warrant. In their contexts, we read the statements simply as additional instances of testimony distinguishing between the "back" secured areas and the front public or "administrative" area of the building.[2] The statements cannot reasonably be

---

[1] Testimony also sometimes referred to "controlled" and "uncontrolled" areas.

[2] The sheriff agreed officers "went out into the visiting area and brought [appellant] back into the secured area."

4

viewed as indicating either witness considered appellant to have been outside the jail when he was arrested.

The undisputed evidence established appellant was not under arrest when he entered the jail for the purpose of visiting an inmate. There was no evidence this conduct was involuntary. *See Rogers v. State,* 105 S.W.3d 630, 638 (Tex.Crim.App. 2003); *Brown v. State*, 89 S.W.3d 630, 633 (Tex.Crim.App. 2002) (both discussing meaning of voluntary under Penal Code Section 6.01(a)). Appellant's knowledge of the nature of the substance may be inferred from his possession of it in the coin purse in his pocket, and from his reaction to its discovery.[3] *See Smith v. State*, 56 S.W.3d 739, 746 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd) (without admission by the accused, due to its subjective nature, knowledge element of possession offense may be inferred from circumstantial evidence), citing *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985). On this evidence a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Poindexter*, 153 S.W.3d at 405 (stating standard for reviewing legal sufficiency of evidence).

With respect to appellant's factual sufficiency challenge, he cites no evidence in the record contrary to the jury's findings that the substance recovered from appellant was methamphetamine, he knew the nature of that substance, or that he knew he was entering a correctional facility when he initiated the visitation. The jury's verdict was not contrary

---

[3] One officer testified that, after the methamphetamine was discovered, appellant was "visibly shaken, a little upset about the situation."

5

to the great weight and preponderance of the evidence. *See Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Appellant's second and third issues are overruled.

By his first issue, appellant contends the trial court erred by failing to include in the jury charge on guilt/innocence the definition of "voluntary possession" in accordance with Penal Code sections 6.01(a) and (b).[4] An instruction on the issue of voluntariness of a defendant's conduct can be appropriate. *See Rogers,* 105 S.W.3d at 638; *Brown*, 89 S.W.3d at 633. But, as noted, we see no evidence any involuntary act was involved in appellant's entry of the jail or his possession of the methamphetamine as he entered it. In *Brown* the Court of Criminal Appeals held the possession of a controlled substance by a person brought to jail after his arrest did not prevent prosecution under section 38.11(b)[5] on the basis his conduct was not voluntary. 89 S.W.3d at 633. The differences between sections 38.11(b) and (d)(1)(B) do not distinguish the holding in *Brown*. Appellant points out that in *Brown* the defendant was instructed to inform the deputy if he possessed any contraband "before they stepped inside the jail." 89 S.W.3d at 632. No evidence shows that appellant was deprived of the opportunity to leave the contraband he was carrying elsewhere before he stepped inside the jail. We find the trial court did not err by failing to

---

[4] Appellant acknowledges that no objection to the omission was raised at trial, so if it were error, it would require reversal only if it caused appellant harm so egregious as to deprive him of a fair trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (setting forth harm standard).

[5] Section 38.11(b) provides a person commits an offense if the person takes, *inter alia*, a controlled substance "into a correctional facility." Tex. Pen. Code Ann. § 38.11(b) (Vernon 2003 & Supp. 2006).

include in the charge an instruction regarding the voluntariness of appellant's possession, and overrule his first issue.

Having overruled appellant's issues, we affirm the trial court's judgment.

James T. Campbell
Justice

Do not publish.